**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

PHILLIP STEPHENSON, :

                      Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                      Defendant. :

Case No. 3:11-cv-164

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed a application for SSD on January 11, 2006, alleging disability from September 1, 2002, due to posttraumatic stress disorder, bipolar disorder, and hearing loss. (Tr. 51-56; 90). The Commissioner denied Plaintiff's application initially and on reconsideration. (Tr. 33-35; 37-38). After a hearing (Tr. 797-835), Administrative Law Judge James Knapp determined that Plaintiff is not disabled. (Tr. 10-25). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff met the insured status requirement of the Act through March 31, 2007. (Tr. 16, ¶ 1). Judge Knapp then found that as of his date last insured, Plaintiff had severe impairments consisting of mild cervical degenerative disc disease, hearing loss in his left ear, posttraumatic stress disorder (PTSD), and

3

chronic alcohol abuse, but that he did not have an impairment or combination of impairments that met or equaled the Listings. *Id.,* ¶ 3; Tr. 20, ¶ 4. Judge Knapp found further that prior to his date last insured, Plaintiff had the residual functional capacity to perform a limited range of medium work. *Id.*, ¶ 5. Judge Knapp also found that prior to his date last insured, Plaintiff was able to perform his past relevant work as a lawn maintenance worker. (Tr. 23, ¶ 6). Judge Knapp then used sections 203.19 and 203.12 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that prior to the date Plaintiff was last insured, there was a significant number of jobs in the economy that Plaintiff was capable of performing, (Tr. 24, ¶ 10), and Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 25).

In his Statement of Errors, Plaintiff challenges the Commissioner's findings with respect to his alleged mental impairments. (Doc. 8). Accordingly, the Court will focus its review of the record on the mental health evidence.

The record contains a copy of Plaintiff's voluminous medical treatment notes from Veteran's Administration, (VA), health care facility dated October 1995 through September 2008. (Tr. 145-520; 558-788). Those notes reveal that Plaintiff's VA health care providers identified Plaintiff's diagnoses as, *inter alia,* PTSD, hearing loss, alcohol dependence, and polysubstance dependence. *Id.* The notes also reveal that Plaintiff has been hospitalized numerous times for psychiatric treatment. *Id.* In addition, a Rating Decision dated November 13, 2002, indicates the VA has rated Plaintiff 100% disabled due to PTSD effective April 23, 2001, the date the VA received Plaintiff's claim. (Tr. 76).

Examining psychologist Dr. Flexman reported on April 26, 2006, that Plaintiff had a tenth grade education, earned a GED, had multiple psychiatric hospitalizations with the last one

4

in 2000, for "temper problems", he was seeing a psychiatrist once every two months for the past twenty years, and that he was seeing a counselor for anger management. (Tr. 789-92). Dr. Flexman also reported that Plaintiff's posture was relaxed, his facial expressions were within normal limits, his speech was appropriate, his affect was appropriate, his mood was calm, and that he was alert and oriented. *Id.* Dr. Flexman noted that Plaintiff's attention span was good, his effort was good, his abstract reasoning and ability to do simple reasoning were good, his concentration was good, and that his reliability was good. *Id.* Dr. Flexman also noted that Plaintiff's intellectual functioning was average, his memory was good, his judgment for ordinary daily affairs was fair, that he was not able to acknowledge the presence of psychological issues in his life, and that obsessive thinking concerning somatic or other psychological problems was out of proportion with reality and no somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as PTSD, chronic, alcohol abuse in partial remission, and avoidant personality traits and assigned him a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff's abilities to understand, remember, and carry out simple instructions, to make judgments for simple work-related decisions, and to sustain attention and concentration were slightly impaired and that his abilities to interact with others and respond appropriately to work pressures in a normal work setting were moderately impaired. *Id.*

The transcript contains the office notes of treating physician Dr. Ryan dated December 27, 2006, through June 19, 2007. (Tr. 793-96). On December 27, 2006, Dr. Ryan noted that Plaintiff reported that a piece of his ceiling had fallen on his head and he "blacked out". *Id.* Dr. Ryan also noted that Plaintiff was oriented, complained of shoulder and neck pain, and that he had a laceration on the top of his head. *Id.* Dr. Ryan recommended Plaintiff go to the VA Urgent Care for further treatment. *Id.*

5

Plaintiff sought treatment at the VA urgent care clinic on December 27, 2006. The health care provider noted that Plaintiff reported a portion of a drywall ceiling fell on his head, that he did not lose consciousness but "felt pretty stunned", and that he had a slight headache that was "from standing around in the waiting room and not from the injury". (Tr. 192-94). It was also noted that Plaintiff was alert and oriented, anxious, and not in distress, he had a two inch long laceration on the left side of his occipital eminence, and that he had an otherwise normal exam. *Id.* Plaintiff's head laceration was stapled and his CT scan was unremarkable. *Id.*

Plaintiff was involved in an incident on July 6, 2007, in which a "lady hit the bumper of his car with very little damage ... the lady accuse[d] him of being drunk and also accused him of hitting her." (Tr. 778). The police went to Plaintiff's home and arrested him for "hiting [sic] the lady and running out of the scene of the accident". *Id.* Plaintiff was fined, placed on probation until 2010, and needed residential treatment for alcohol use. *Id.*

Plaintiff continued to receive treatment at the VA health care facility. In February, 2008, Plaintiff's substance abuse treatment provider requested Plaintiff undergo a neuropsychological consult because he showed rigid thinking, lack of insight, and a significant memory impairment, he was a poor historian, reported that he had been "clean" for six months but that was questionable, and because his health care provider wanted to know if Plaintiff's goal of living on his own was appropriate. (Tr. 606-09). On February 12, 2008, psychologist Dr. Stegman reported that Plaintiff quit school after ten years, obtained a GED, was on 100% VA disability for PTSD, and that he had two traumatic brain injuries including a motor vehicle accident in 1973, following which he was unconscious or at least unaware for five days, and an incident in 2006 when a ceiling fell on him and he was briefly unconscious. *Id.* Dr. Stegman also reported that Plaintiff

6

acknowledged long-term alcohol abuse, had not consumed since July 2007 denied drug abuse, resided alone in an apartment, was alert, had normal speech, and that he displayed a pattern of rather loose and rambling speech. *Id.* Dr. Stegman noted that Plaintiff's mentation was concrete, he was oriented, inconsistent in reporting history, displayed a moderate range of affect, had a normal mood, questionable judgment functions and insight, and that for the most part he sustained attention for extended periods of time. *Id.* Dr. Stegman also noted that testing indicated that Plaintiff's mental activity functions were intact, he had an impairment with complex mental activity functions, his language, visual, and memory functions were intact, and his motor skills were intact. *Id.* Dr. Stegman identified Plaintiff's diagnoses as cognitive disorder NOS and traumatic brain injuries. He opined that Plaintiff could be expected to display poor social competence as well as poor judgments regarding his behavior, that care providers might consider the need for a payee, and that much of his dysfunctional behaviors arise from neurocognitive impairments and not PTSD. *Id.*

Plaintiff testified at the November 2008 hearing that he stopped working in December, 2001, because he had received a notice from the VA that he would be receiving his first VA compensation check in January 2002 and he was not allowed to work, he was a binge drinker, the last time he drank alcohol was in April 2008 he had not had any alcohol for the eighteen months prior to that date, he had severe depression and severe anxiety and panic attacks, chronic insomnia, he spent about ten hours a day watching television, prepared his own meals, and that he performed household chores. (Tr. 801-17). Plaintiff also testified that he shopped, visited others very infrequently, and that he was not able to work because he had arthritis in his neck and shoulders and his psychological problems got worse. *Id.*

A medical advisor (MA) testified at the hearing that she had reviewed the entire

7

record, that it appeared that on July 6, 2007, there was an incident where Plaintiff hit someone with the bumper of his car and he left the scene of the accident but had no memory of it, and that at that point he would not have been able to maintain full time employment because of his cognitive difficulties. (Tr. 817-23). The MA also testified that July 2007 was a good starting point because the only other starting point would be January 22, 2008, when Plaintiff had the neuropsych evaluation, and that as of July 2007, Plaintiff met Listing 12.02. *Id.* In addition, the MA testified that Plaintiff's PTSD did not disable him because he continued to work, that as the alcohol progressed and his cognitive disorder progressed, he lost the ability to maintain employment, and that prior to July 2007 he would have been restricted to simple repetitive tasks that did not involve dealing with the public, strict time standards, and production quotas. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by finding that he was not disabled prior to his date last insured because neuropsychological testing in early 2008 revealed deficits that the MA determined were consistent with meeting Listing 12.02 and a reasonable inference of his onset date would relate the cognitive deficits to a head injury he sustained in December, 2006. (Doc. 8). The thrust of Plaintiff's argument is that Judge Knapp drew incorrect inferences from Dr. Stegman's February 2008 evaluation and the MA's hearing testimony. Plaintiff's position is that Judge Knapp should have concluded that the December 2006 ceiling incident caused his cognitive disorders which, according to the MA, was his disabling impairment. In other words, Plaintiff essentially argues that the Commissioner erred by failing to find that he satisfied Listing 12.02 as of the December 27, 2006, incident.

A key question in this case is the severity of any of Plaintiff's impairments before the expiration of his insured status. A social security disability claimant bears the ultimate burden of

proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Id.* (citation omitted); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990). Post insured status evidence of a claimant's condition is generally not relevant. *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981); *see also, Bogle v. Secretary of Health and Human Services,* 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes that an impairment existed continuously and in the same degree from the date the insured status expired. *Johnson v. Secretary of Health and Human Services,* 679 F.2d 605 (6th Cir. 1982). Plaintiff's insured status expired on March 31, 2007. Therefore, Plaintiff must establish that he became disabled on or before that date.

Contrary to Plaintiff's argument, this Court cannot say that the Commissioner erred by determining that Plaintiff failed to establish that he was disabled on or before the expiration of his insured status. As noted above, Plaintiff's position is that the evidence establishes that his cognitive impairment became disabling on or about December 27, 2006, the date of the falling ceiling incident. However, the evidence simply does not support Plaintiff's argument.

Dr. Ryan examined and treated Plaintiff on December 27, 2006, shortly after the ceiling fell on Plaintiff and she noted that although he had a head laceration, Plaintiff was oriented and she advised him to seek further treatment at the VA facility which Plaintiff did. At that time, the health care provider at the VA noted that Plaintiff reported that when the ceiling fell on his head, he did not lose consciousness but that he "felt pretty stunned" and that he had a slight headache, not as a result of the injury but rather as a result of "standing around in the waiting room." The VA health care provider reported that Plaintiff was alert and oriented, anxious, and not in distress and

9

that his CT scan was unremarkable. In other words, except for the two inch long laceration on the left side of his head, Plaintiff's exam was essentially normal.

Seven months later, in July 2007 Plaintiff was involved in an automobile-related incident which resulted in the police going to Plaintiff's home and arresting him for hitting a lady and leaving the scene of the accident. *Id.* Plaintiff's alleges that he has no memory of that event and it is the Plaintiff's failure to recall the July 2007 event on which the MA relied in determining that Plaintiff's cognitive impairment satisfied Listing 12.02.[1] There is nothing in the MA's testimony which relates Plaintiff's meeting the Listings to any time prior to July 6, 2007. Indeed, the MA testified that if Plaintiff did not satisfy the Listings in July 2007 the record would not support a finding that he did so until the time he had the neuropsycholgical evaluation which, as noted above, was in February 2008 and that prior to July 2007 he was capable of performing simple repetitive tasks that did not involve dealing with the public, strict time standards, and production quotas. Finally, the MA offered no opinion as to the cause of Plaintiff's cognitive impairment.

Similarly, Dr. Stegman, the neuropsychologist who evaluated Plaintiff in February, 2008, almost a year after the expiration of Plaintiff's insured status, did not offer an opinion as to the cause of Plaintiff's cognitive impairment. Further, Dr. Stegman did not relate Plaintiff's allegedly disabling cognitive impairment back to a time prior to the expiration of his insured status.

Under these circumstances, this Court concludes that the Commissioner did not err by failing to find that Plaintiff was disabled on or before March 31, 2007, the date he was last insured for purposes of the Social Security Act.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether

---

[1] Plaintiff argues that the MA appeared to be unaware of the December 27, 2007, falling ceiling incident. However, the Court notes that the MA testified that she had reviewed the record prior to testifying. (Tr. 817).

the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 6, 2012                                                                  s/ **Michael R. Merz**
                                                                       United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).